**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **11-03591-hb**

# ORDER ON APPLICATION TO EMPLOY

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**08/31/2011**



US Bankruptcy Judge
District of South Carolina

Entered: 08/31/2011

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-03591-HB |
| | Chapter 11 |
| Kobe Real Estate, LLC, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** came before the Court upon the Application to Employ Robert H. Cooper and the Cooper Law Firm ("Attorney") as Attorneys for the Debtor, Kobe Real Estate, LLC ("LLC").[1] The United States Trustee ("UST") filed an Objection to the Application.[2] A hearing on this matter was held on July 14, 2011, and thereafter the parties submitted memoranda in support of their positions.[3] For the reasons set forth below, the Court finds that the Attorney does not qualify for employment as counsel for the LLC.

**FACTS**

1. Principal(s) of the LLC met with Attorney on August 18, 2010, for an initial attorney interview. Attorney collected filing fees and a retainer, totaling $16,039.00 for the LLC on November 2, 2010.[4]

2. Attorney was also paid a retainer of $9,961 for representation of Janice Kay Kobe and Keith Arnold Kobe, individually, on December 18, 2010.[5] The Kobes

---

[1] Doc. No. 6, filed on June 16, 2011; amended on July 6, 2011. *See* Doc. No. 18.
[2] Doc. No. 9, filed on June 27, 2011. LLC filed a Response on July 5, 2011. *See* Doc. No. 12.
[3] UST submitted its memorandum on July 25, 2011. *See* Doc. No. 22. LLC submitted its memorandum on July 26, 2011. *See* Doc. No. 23.
[4] Doc. No. 6 at 2. From this sum, $15,000 was allotted for attorney's fees and $1,039 was used for the filing fees.
[5] Doc. No. 11 at 41, C/A No. 11-00721-HB.

1

thereafter filed a Chapter 11 voluntary petition in this Court on February 4, 2011, signed by Attorney as their counsel of choice.[6]

3. Two Motions to Enlarge Time for Filing Schedules, Statement of Financial Affairs, and Documents Required under 11 U.S.C. § 521(a) were filed in the Kobes' case.[7] On March 8, 2011, Attorney filed Schedules on that docket.[8] The Schedules do not disclose any debts, obligations, transfers, causes of action or similar reportable financial transactions between the Kobes and the LLC.

4. The UST represented to the Court that at the § 341 meeting for the Kobes' individual case held on March 18, 2011, the UST raised questions about ownership of real property located in John's Island, South Carolina, that was sold before the Kobes' bankruptcy was filed. At that § 341 meeting, one of the Kobes stated that information about the John's Island property was not listed in their Schedules because the property was owned by the LLC.

5. Approximately seven (7) months after the LLC's retainer was deposited, Attorney initiated the LLC's case by filing a voluntary Chapter 11 petition with this Court, signed by Mr. Kobe. The petition, filed on June 11, 2011, designates each Kobe as a "Member/Owner 50%" of the LLC and discloses their pending bankruptcy as a related case.[9]

---

[6] *In re Kobe*, C/A No. 11-00721-HB (Bankr. D.S.C. Feb. 4, 2011).
[7] Doc. No 6 at 2, C/A No. 11-00721-HB. The Motion states that an extension of time is necessary because "Debtors' attorney needs more time to research documents regarding the Debtors' real property, profit & loss information, and to complete the Schedules, Statement of Financial Affairs, and documents . . ." These documents, if not filed with the voluntary petition, are due fourteen (14) days after the case is initiated, without further extension as requested here. *See* Fed. R. Bankr. P. 1007-I(c).
[8] Doc. No. 11, C/A No. 11-00721-HB. The Schedules have not been amended to add the John's Island property or to indicate transfer of such property.
[9] Doc. No. 1 at 4.

2

6. On June 16, 2011, Attorney filed a Motion to Extend Time to File Schedules and Statements[10] on behalf of the LLC, and the Application to Employ he and his firm.[11] Despite the fact that Attorney already represented the LLC's principals in their individual Chapter 11 case, LLC's Application to Employ did not mention this, and summarily stated the following:

> The [LLC] believes to the best of its knowledge that Robert H. Cooper, Esquire and all members of The Cooper Law Firm are disinterested persons as that term is defined in 11 U.S.C. § 101(14) and that none of those persons hold or represent an interest adverse to the estate of the debtor.[12]

7. Furthermore, the Application to Employ stated that "[t]o the best of the [LLC]'s knowledge, neither Robert H. Cooper nor any member of The Cooper Law Firm has any connection with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants . . ."[13]

8. The Application to Employ also provided that "[t]he retainer was paid by the [LLC] from its funds on hand."[14]

9. The supporting Affidavit of Attorney set forth the following:

> Both The Cooper Law Firm and I are disinterested persons in this case as that term is defined in 11 U.S.C. § 101(14). Neither The Cooper Law firm nor I hold or represent an interest adverse to the estate. . . .
>
> With the following exceptions, neither the Cooper Law Firm nor I have connections with the Debtor, creditors, or any other party in interest, their respective attorneys and accountants . . .[15]

---

[10] Doc. No. 5 at 2 (listing the same reason for the extension requested in the Kobes' individual case).
[11] Doc. No. 6.
[12] *Id.* at 1, ¶ 6.
[13] *Id.* at 2.
[14] *Id.*
[15] *Id.* at 3, ¶¶ 4-5.

The pending case for the Kobes was not mentioned as an exception. In addition, the affidavit affirmed that "[t]he retainer was paid by the [LLC] from its funds on hand."[16]

10.     The UST objected to the Application to Employ[17], asserting that it failed to disclose representation of the LLC's principals—the Kobes—a fact that may prevent Attorney from qualifying as "disinterested" under § 101(14). In addition, the UST raised an issue regarding the source of the $15,000 retainer paid to Attorney by the LLC, questioning whether it was from the Kobes' property.

11.     LLC filed a Response to the Objection on July 5, 2011. That Response disclosed Attorney's representation of the Kobes after the UST's Objection highlighted this omission, and stated that there are no claims or causes of action between the LLC and the Kobes.[18]

12.     The LLC's Schedules were filed on July 5, 2011, and signed by Mr. Kobe.[19] They do not disclose any debts, obligations, transfers, causes of action or any similar reportable financial transactions between the LLC and the Kobes.

13.     On July 6, 2011, LLC filed an Amended Application to Employ Attorney.[20] The Amended Application still states that Attorney is disinterested as defined by § 101(14); LLC also attached the statutory language for § 101(14) (defining "disinterested person") and § 101(31) (defining "insider"). In addition, the Amended Application still states that the attorney's fees and costs were paid to Attorney from the LLC's own funds, but italicizing the words "*from [LLC]'s own funds.*"

---

[16] *Id.* at 4.
[17] Doc. No. 9, filed on June 27, 2011.
[18] Doc. No. 12.
[19] Doc. No. 13.
[20] Doc. No. 18.

4

14.  The Amended Application explains that Attorney has no connection with the LLC, the LLC's creditors, or any other party in interest, except that the firm represents the Kobes in their individual Chapter 11 case.  The Amended Application provides that:

> To the best of [LLC]'s knowledge no pre-petition compensation of any kind is owed to the Appointee or his associations; That the Appointee does not represent interests adverse to either estate or either Debtor-in-Possession; That no adverse claims or causes of action exist between the debtor in the present case, Kobe Real Estate, LLC and its principals, Keith & Janice Kobe; That the Appointee, Robert H. Cooper is a disinterested person as defined in 11 U.S.C. § 101(14); and That the Debtor and Appointee are informed and believe that it would be in the best interests of the parties to employ the legal services of Robert H. Cooper and The Cooper Law Firm, nonetheless, to perform the necessary legal services for the Debtor-in-Possession . . .[21]

15.  At the July 14, 2011, hearing on the Application to Employ, the UST called the Court's attention to the fact that the $16,039 remitted to Attorney for fees and costs associated with the LLC's case was paid from the proceeds of a sale of real property located in John's Island, South Carolina.  The John's Island property was sold on October 13, 2010, approximately 232 days prior to the LLC's petition[22], approximately 114 days prior to the Kobes' petition, and shortly before the proceeds were remitted to Attorney on November 2, 2010 for the LLC's case.

16.  The UST reported that, by viewing the property records online after the § 341 meeting, it was clear that the John's Island property was deeded in the Kobes' names, not the LLC.  However, Mr. Cooper stated that he was not aware that the John's

---

[21] *Id.* at 2. Attorney's Amended Affidavit, attached to the Amended Application to Employ, included the same changes and explanations as the Amended Application.
[22] Doc. No. 22 at 4.

5

Island property was owned by the Kobes, after a review of the tax returns of the LLC and based on his questioning of the Kobes.[23]

17. Because the property was deeded in the Kobes' names, at closing, the net proceeds from the sale of the property were remitted to the Kobes by a check made payable to them individually. Sometime thereafter, the Kobes deposited this check into their individual bank account and then transferred the money to the LLC. Attorney stated at the hearing that, according to his deposit slip for these funds, the retainer check received was from the LLC and not the Kobes. Attorney also argued that "they all believed that the fees did in fact come from Kobe Real Estate, LLC."[24]

17. The UST asserts that, because the principals transferred this money to the LLC, there is a potential claim or controversy between the Kobes' bankruptcy estate and the LLC's bankruptcy estate. That is, the Kobes' bankruptcy estate may be a creditor of or the holder of a cause of action against the LLC's bankruptcy estate, as the LLC likely received a transfer that is recoverable in the Kobes' case for the benefit of their creditors. The UST argues that this, in turn, creates an actual conflict of interest with respect to Attorney's dual representation of the LLC and the Kobes, which is prohibited by § 327(c).

18. At the hearing, Attorney stated that the Kobes do not intend to collect the $16,039 from the LLC because money has been going back and forth between the Kobes and the LLC for years. He also argued that it is beneficial to both estates for Attorney to continue with the dual representation.

---

[23] Doc. No. 23, Ex. 5-7
[24] *See* Hr'g App. Employ., Doc. No. 20.

19. After a review of the Court's docket in the Kobes' case, the Court notes that no Application to Employ Attorney has been filed in that matter to date. The Kobes' docket indicates that on August 16, 2011, they filed a Disclosure Statement. The terms of that document confirm that the Kobes transferred $16,039 to the LLC, and that the then LLC paid this amount to Attorney:

> Although the debtors thought that the $15,000 attorney's fees and the $1,039 filing fee for their business chapter 11 . . . were derived from Kobe Real Estate, LLC's funds, it appears that they paid that entities' fees and costs personally. The debtors['] accountant had depreciated real property located on Johns Island, SC for several years on the LLC's tax returns. That is why they thought the real property was owned by the LLC. However, the records in Charleston County, SC reflect that the *debtors owned that property personally. Funds realized after sale costs and lien paid at the closing of the real property transaction were used to fund the LLC's chapter 11 case.*[25]

20. There has been no amendment to the Schedules and Statements for the Kobes or the LLC to disclose any obligations or potential causes of action between the respective debtors.

### DISCUSSION AND CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Local Civil Rule 83.XI.01, DSC. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

In the bankruptcy context, the employment of professionals is strictly regulated by the Code and Bankruptcy Rules. "In enacting the Bankruptcy Code, Congress entrusted the power to approve the appointment of professionals to work on behalf of a

---

[25] Doc. No. 26 at 5, C/A No. 11-00721-HB (emphasis added).

bankruptcy estate to the discretion of the bankruptcy courts." *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992). The Code provides that:

> the trustee, with the court's approval, may employ one or more attorneys . . . *that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee* in carrying out the trustee's duties under this title. . . .

11 U.S.C. § 327(a) (emphasis added).[26] This provision is intended to ensure "that all professionals . . . tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Johnson*, 312 B.R. 810, 819 (E.D. Va. 2004) (citing *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994)). While § 327(a) bestows upon the bankruptcy court broad discretion, the provision makes clear that the court may only approve the employment of a professional that: 1) does not hold or represent an interest adverse to the estate; and 2) is disinterested. 11 U.S.C. § 327(a).

Furthermore, § 327(c) governs scenarios where the attorney also represents a creditor. Pursuant to that provision, in Chapter 11 cases, "a person is not disqualified for employment . . . solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case *the court shall disapprove such employment if there is an actual conflict of interest*." 11 U.S.C. § 327(c) (emphasis added).

The Federal Bankruptcy Rules implement these Code provisions by requiring attorneys to submit an application for an order of employment to the bankruptcy court and the UST. *See* Fed. R. Bankr. P. 2014(a). In addition:

> The application shall state . . . any proposed arrangement for compensation, and, to the best of the applicant's knowledge, *all of the person's connections with the debtor, creditors, any other party in interest*,

---

[26] In Chapter 11 cases, the "trustee" is typically the debtor-in-possession. In the instant case, the LLC serves as the debtor-in-possession.

8

> their respective attorneys and accountants . . . The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants . . .

*Id.* Requiring such specific disclosures before the approval of the Court indicates the importance of having a "disinterested person" represent the debtor and the estate.

In disputes over the employment of professionals under § 327, the trustee, or in this case, the debtor, bears "the burden of demonstrating that an applicant for professional employment is qualified under § 327 . . ." *Harold & Williams Dev. Co.*, 977 F.2d at 910. The debtor must do so through the required disclosures under Rule 2014(a).[27] Once the debtor has met this burden:

> the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.

*Id.* at 909.

Attorney's representation of related entities in separate bankruptcy cases warrants meticulous disclosure and certainly requires special care in examining the propriety and advisability of the engagement before the requirements of §§ 101(14) and 327(a) can be met. Section 327(a) requires the attorney to: 1) not hold or represent an interest adverse to the estate; and 2) be a disinterested person as defined by § 101(14). 11 U.S.C. § 327(a). A "disinterested person" is defined by the Code as a person who "does

---

[27] *See In re Miracle Christian Int'l Life Ctr.*, No. 08-03474-8-RDD, 2008 WL 5145392, (Bankr. E.D.N.C Dec. 5, 2008).
> Full disclosure in an application to employ and its accompanying affidavit is *necessary* for parties-in-interest, creditors, and the Court to make an assessment as to the possibility of conflicts of interest and whether or not an attorney holds an interest adverse to the estate. *Without full disclosure, no one is able to make an accurate assessment of counsel's ability to be or remain disinterested.*

*Id.* at *1 (emphasis added).

9

not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. §101(14)(C).

> "Holding an interest adverse to the estate" and "representing an interest adverse to the estate" [are] defined as follows:
>
> [T]o hold an interest adverse to the estate means (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival or claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.
>
> To represent an adverse interest means to serve as an agent or attorney for any individual or entity holding such an adverse interest.

*In re Worldwide Wholesale Lumber, Inc.*, 364 B.R. 197, 201-02 (Bankr. D.S.C. 2006) (quoting *In re Air South Airlines, Inc.* C/A No 97-17229-W, 1998 WL 34020727, at *7 (Bankr. D.S.C. Jan, 16, 1998)). "[I]f, *for any reason,* the attorney has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders he or she may not serve as attorney for the Chapter 11 debtor." *In re Rabex Amuru*, 198 B.R. 892, 895 (Bankr. M.D.N.C. 1996) (emphasis in original). Further, § 101(14)(C) is considered a "catch all" provision that "is broad enough to exclude a [professional] with some interest or relationship that 'would even faintly color the independence and impartial attitude required by the Code.'" *In re AFI Holding Inc.*, 530 F.3d 832, 846 (9th Cir. 2008) (citations omitted).

Attorney represents an interest materially adverse to the LLC's estate due to the fact that the LLC received a transfer of $16,039.00 from the Kobes shortly before they

10

filed for bankruptcy protection. Thereafter, the LLC gave this money, which should belong to the Kobes' estate, to Attorney. Both the LLC and Attorney are potential sources for recovery of this sum for the benefit of the Kobes' creditors. Therefore, Attorney is not a disinterested person under § 101(14)(C), as Attorney represents an adverse interest by serving as counsel for the Kobes, who possess an economic interest that would lessen the value of the LLC's bankruptcy estate or that would create either an actual or potential dispute in which the LLC's estate is a rival or claimant. *See Worldwide Wholesale Lumber, Inc.*, 364 B.R. at 201-02. Information about this conflict was only available after the UST vigorously pursued the matter; the disclosures set out in the Application to Employ were insufficient.

Furthermore, the situation at hand creates an actual conflict of interest prohibited by § 327(c). Although not defined by the Code, some courts have found that an actual conflict of interest exists if there is "active competition between two interests, in which one interest can only be served at the expense of the other." *Johnson*, 312 B.R. at 822 (citing *In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir. 1991)).[28]

The Attorney summarily stated that the Kobes do not intend to collect the funds owed to them by the LLC. From the record, however, the Court cannot determine how exactly this decision was made or whether it is advisable. Regardless, such a decision does not discount the existence of a conflict of interest, but rather highlights the issues arising in these cases. Attorney, currently filing documents as counsel for the Kobes' (yet not appointed by the Court), serves as advisor to them regarding any such action to

---

[28] Consequently, if an attorney is employed by both the debtor-in-possession and a creditor, an "actual conflict of interest" warranting disqualification exists if "(i) the interests of the trustee and the creditor are in fact directly conflicting or (ii) the creditor is actually afforded a preference that is denied to other creditors." *In re Johnson*, 312 B.R. 810, 822 (E.D. Va. 2004); *see also In re Worldwide Wholesale Lumber, Inc.*, 364 B.R. 197, 203 (Bankr. D.S.C. 2006).

recover funds or inaction; however, pursuing recovery of the funds would be detrimental to the LLC's estate, and possibly harmful to Attorney's economic interest as well. Attorney's focus on the Kobes' rights and obligations as they examine their options regarding this transfer is unavoidably diluted by his loyalties and obligations to the LLC and vice versa. The duty owed to each client is further muddled by the fact that the advice given to either debtor may affect Attorney's economic and/or professional interest, since he ultimately received the funds in question. Even honest or honorable intentions cannot erase these facts. Accordingly, the Court finds that an actual conflict of interest exists.

Therefore, the Application to Employ must be denied. The Attorney and Applicant have not demonstrated that Attorney is a "disinterested person" pursuant to § 101(14) and an actual conflict exists under § 327(c).

**AND IT IS SO ORDERED.**